## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **DEBORAH PIAZZA**, an individual, | Case No.: 1:24-cv-00051 |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY DEMAND** |
| **HK HOSPITALITY LLC, d/b/a QUALITY INN TUCUMCARI**, a New Mexico limited liability company, | |
| Defendant. | |

Plaintiff DEBORAH PIAZZA ("Plaintiff"), by her undersigned counsel, hereby brings this Complaint under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New Mexico Wage Payment Act ("WPA"), N.M. Stat. § 50-4-1 *et seq.*, and the New Mexico Minimum Wage Act ("MWA"), N.M. Stat. § 50-4-19 *et seq.*, against Defendant HK HOSPITALITY LLC, d/b/a QUALITY INN TUCUMCARI, a New Mexico limited liability company ("Defendant"), and states as follows:

### THE PARTIES

1.      Plaintiff is a New Mexico resident who was employed by Defendant as a Regional Manager at the Quality Inn Tucumcari and the Quality Inn West Texas from 12/31/2019 to 11/7/2021 and as a Hotel Manager at the Quality Inn Tucumcari from 11/21/2021 until 12/6/2023, when Defendant terminated her for, *inter alia*, refusing to accept a settlement check arising from the U.S. Department of Labor's ("DOL") investigation into Defendant's illegal wage practices and for hiring an attorney to independently investigate her wage claims.

2.      Defendant is a New Mexico limited liability company operating in the hospitality industry. Specifically, Defendant owns and operates hotels, including the Quality Inn Tucumcari,

1

located at 3716 East Tucumcari Boulevard, Route 66, Tucumcari, New Mexico 88401.

## JURISDICTION

3.    This Court has subject matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 because the FLSA claims raise a federal question under 29 U.S.C. § 201 *et seq*.

4.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the FLSA claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

5.    This Court has personal jurisdiction over Defendant because Defendant resides in New Mexico, conducts business in New Mexico, and employs individuals in New Mexico.

## VENUE

6.    Venue is proper in the District of New Mexico under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## GENERAL ALLEGATIONS

7.    This is an action for unpaid minimum wages, unpaid overtime compensation, unlawful retaliation, and liquidated damages under the FLSA, the MWA, and the WPA.

8.    Defendant employed Plaintiff as a Regional Manager at the Quality Inn Tucumcari and the Quality Inn West Texas from 12/31/2019 to 11/7/2021 and as a Hotel Manager at the Quality Inn Tucumcari from 11/21/2021 to 12/6/2023.

9.    As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff worked seven days and 71 hours per week and was responsible for the smooth and efficient operation of the hotel.

10.    As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff had to be physically present at the hotel from 8:00AM to 5:00PM *every single day*. (**Exhibit 1**, Hotel Manager Job Requirements and Policies.)

11.     As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff rarely if ever took a day off and had to obtain prior management approval to take a day off. (*Id.*)

12.     As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff had to be available *24 hours per day* in case of major hotel emergencies. (*Id.*)

13.     Defendant paid Plaintiff a bi-weekly salary with no overtime pay. (**Exhibit 2**, Plaintiff's Earnings Statements ("Earnings Statements").)[1]

14.     Defendant classified Plaintiff as exempt from overtime even though Defendant paid her less than $684 per week. (*Id.*) *See* 29 C.F.R. § 541.600 (To qualify as exempt from overtime, "an employee must be compensated on a salary basis at a rate of not less than $684 per week").

15.     In 2023, the DOL initiated an investigation into Defendant's pay practices. (**Exhibit 3**, DOL Letter.) The investigation covered the period from 11/7/2021 through 8/27/2023. (*Id.*)

16.     Plaintiff cooperated with the DOL investigation by furnishing pay records to the DOL and speaking with DOL investigators.

17.     The DOL investigation revealed that Defendant owed Plaintiff $9,815.38 in back wages and liquidated damages. (*Id.*)

18.     Before the investigation's results were revealed to Plaintiff, Defendant's manager Jaya Merchant offered Plaintiff $600 in full satisfaction of Defendant's wage violations.

19.     Plaintiff rejected Defendant's $600 offer and immediately contacted the DOL agent in charge of the investigation, who confirmed that Plaintiff was owed substantially more than $600.

20.     The DOL never explained to Plaintiff how it calculated her wage damages or whether her wage damages were for unpaid overtime, unpaid minimum wages, or both.

---

[1] The Earnings Statements (**Exhibit 2**) are incomplete. Defendant is in exclusive possession and control of Plaintiff's complete set of Earnings Statements.

21.     Likewise, Defendant never explained to Plaintiff how it arrived at a $600 settlement offer; nor did Defendant explain why $600 fairly compensates her for a $9,815.38 wage claim. Instead, Defendant's manager Jaya Merchant lied to Plaintiff by telling her that Defendant can't afford to pay $9,815.38, even though Defendant effectively stole this money from Plaintiff by forcing her to work 71 hours per week with no days off for almost two years with no overtime pay.

22.     Confused and struggling to find answers, Plaintiff wisely retained counsel to investigate her wage claims and to ensure that she was fairly paid for Defendant's wage violations.

23.     Upon the official conclusion of the DOL investigation, the DOL required Defendant to tender a $9,815.38 settlement check to Plaintiff.

24.     Defendant tendered the settlement check to Plaintiff on 11/21/2023.

25.     After conferring with her counsel, Plaintiff refused to accept the settlement check and notified Defendant that she retained an attorney to independently investigate her wage claims.

26.     Defendant's managers, including Managing Director Aman Patel and Regional Manager Abir Maru, demanded that Plaintiff cash the settlement check, and when she refused, they retaliated against Plaintiff by taking a series of materially adverse actions against her, including firing her on 12/6/2023 under the guise of "excessive tardiness and irresponsible behavior." (**Exhibit 4**, Termination Letter.)

27.     Even after firing Plaintiff, Defendant continued retaliating against her by withholding her final paycheck.

28.     Plaintiff demanded payment from Regional Manager Abir Maru on 12/22/2023, but Mr. Maru ignored Plaintiff's written demand and refused to pay Plaintiff her final paycheck, forcing Plaintiff to submit a wage claim to the New Mexico Department of Workforce Solutions ("DWS") on 12/26/2023. (**Exhibit 5**, Written Demand; **Exhibit 6**, Wage Claim Submission.)

29.     In response to Plaintiff's wage claim submission to the DWS, Defendant paid Plaintiff on 12/28/2023 – 22 days after terminating her.

**Fair Labor Standards Act (FLSA)**

30.     The FLSA was enacted to protect workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981).

31.     Nearly 80 years ago, the Supreme Court wrote that the "the prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). The Court explained that Congress passed this law as

> a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Id.* at 706-07.

32.     The FLSA is designed to ensure each employee the Act covers receives "[a] fair day's pay for a fair day's work" and protects them from "the evil of overwork as well as underpay." *Barrentine*, 450 U.S. at 739 (internal citations and quotations omitted).

33.     Enacted in 1938, the FLSA generally requires covered employers to pay nonexempt employees at least $7.25 per hour, 29 U.S.C. § 206(a)(1), and at least 1.5 times the employee's "regular rate" of pay for all hours worked over 40 in a workweek. *Id*. § 207(a)(1).

**FLSA Enterprise Coverage**

34.     The FLSA guarantees minimum wage and overtime compensation for employees who are engaged in commerce or in the production of goods for commerce (so-called "individual coverage") or who are employed in an enterprise engaged in commerce or in the production of

goods for commerce (so-called "enterprise coverage"). *Id*. §§ 206(a), 207(a)(1).

35.    For enterprise coverage to attach, the employer must (1) have employees engaged in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and (2) have an annual gross volume of sales of at least $500,000. *Id*. § 203(s)(1)(A).

36.    The first prong of the enterprise coverage test is satisfied, as Defendant employs office employees, housekeepers, and other employees who regularly and recurrently handle computers, keyboards, telephones, fax machines, printers, office supplies, cleaning supplies, coffee makers, towels, pillows, blankets, hair dryers, amenities, steam irons, dispensers, personal care items such as toothbrushes and tooth paste, shower liquids, ice buckets, ironing boards, bed scarves, and top sheets that have been moved in or produced for commerce.

37.    The second prong of the enterprise coverage test is also satisfied, as Defendant's gross annual sales exceed $500,000.

38.    Hence, Defendant is a covered enterprise under the FLSA.

**<u>Defendant Paid Plaintiff a Bi-Weekly Salary with No Overtime Pay</u>**

39.    As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff worked seven days and 71 hours per week.

40.    Defendant classified Plaintiff as exempt from overtime pay.

41.    Defendant paid Plaintiff a bi-weekly salary with no overtime pay. (**Exhibit 2**, Earnings Statements.)

42.    Plaintiff's base salary on 11/21/2021 was $31,616.00 per annum, paid bi-weekly, which equates to $608.00 per week. (*Id*.)

43.    On 4/1/2022, Defendant raised Plaintiff's base salary to $33,999.94 per annum,

paid bi-weekly, which equates to $653.85 per week. (*Id*.)

44.    On 8/27/2023, in response to the DOL's investigation into it's illegal wage practices, Defendant raised Plaintiff's base salary to $35,999.86 per annum, paid bi-weekly, which equates to $692.31 per week. (*Id*.)

45.    Plaintiff's salary remained unchanged until 12/6/2023, when Defendant terminated Plaintiff for, *inter alia*, refusing to accept a settlement check arising from the DOL's investigation into Defendant's illegal wage practices and for hiring an attorney to investigate her wage claims.

## FLSA Overtime Violations

46.    The FLSA requires employers to pay nonexempt employees at least 1.5 times the "regular rate" of pay for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1).

47.    But an employee is exempt, and thus not entitled to overtime pay, if she works "in a bona fide executive, administrative, or professional capacity," as those terms are defined by the governing regulations. *Id*. § 213(a)(1).

48.    Hence, Plaintiff's entitlement to FLSA overtime pay turns on whether Plaintiff was employed in a bona fide executive, administrative, or professional capacity.

49.    The employer bears the burden of proving that an employee is exempt from FLSA overtime pay. *Viviani v. Coffey & Associates, Inc.*, No. CIV-22-00090-PRW, 2023 WL 3444696, at *2 (W.D. Okla. May 12, 2023).

50.    To meet its burden in proving an exemption, the employer must establish that an employee's duties, salary level, and salary basis meet certain thresholds. *See* 29 C.F.R. § 541.700 (duties test); *id*. § 541.600 (salary level test); *id*. § 541.602 (salary basis test).

51.    To satisfy the salary level test, an employee must be paid at least $684 per week. *Id*. § 541.600.

52.     Plaintiff's Earnings Statements (**Exhibit 2**) conclusively establish that Defendant paid Plaintiff <u>less than $684 per week</u>.

53.     Hence, Defendant misclassified Plaintiff as exempt from FLSA overtime pay, as she did not meet the FLSA's salary level test. (*Id.*) *See* 29 C.F.R. § 541.600.

54.     Defendant willfully violated 29 U.S.C. § 207(a)(1) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek.[2]

**<u>Late Payment Under the FLSA</u>**

55.     The FLSA requires employers to pay nonexempt employees at least $7.25 per hour. 29 U.S.C. § 206(a)(1).

56.     A private right of action is established by 29 U.S.C. § 216(b) which provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

57.     The FLSA does not define when wages become "unpaid".

58.     DOL regulations explain that "a cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek *at the regular pay day for the period in which the workweek ends*." 29 C.F.R. § 790.21(b) (emphasis added) (footnote omitted).

59.     The Tenth Circuit has held that an FLSA violation occurs when overtime wages are "not paid when due in the regular course of employment," thus entitling the employee to liquidated

---

[2] The "regular rate" of pay is an hourly rate, 29 C.F.R. § 778.109, but here, Plaintiff was paid a fixed bi-weekly salary regardless of the number of hours she worked. (**Exhibit 2**, Earnings Statements.) For such employees, the "regular rate" of pay, on which time and a half must be paid, is computed according to the FLSA's governing regulations at 29 C.F.R. § 778.113.

damages. *Seneca Coal & Coke Co. v. Lofton*, 136 F.2d 359, 363-64 (10th Cir. 1943).

60.    The Ninth Circuit agreed that wages are "unpaid" when they are not received on an employee's regular payday for the pay period at issue. *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993).

61.    Several other Circuit Courts have held that employees must be paid *on payday* under the FLSA. *See Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir. 1943) (The FLSA "plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day."); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991) ("liquidated damages ... compensate employees for the losses they may have suffered by reason of not receiving their proper wages *at the time they were due*," emphasis added); *A. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation … to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages").

62.    Defendant's regular payday is every other Friday.

63.    The regular payday for the 11/20/2023 to 12/3/2023 pay period was 12/8/2023. Defendant paid Plaintiff on 12/13/2023 instead of 12/8/2023.[3]

64.    The regular payday for the 12/4/2023 to 12/17/2023 pay period was 12/22/2023. Defendant paid Plaintiff on 12/28/2023 instead of 12/22/2023.

65.    Under *Seneca Coal,* Plaintiff's wages became "unpaid" when they were not received by the regular payday for the pay period at issue.

66.    The moment Defendant failed to pay Plaintiff on the regular payday triggered her

---

[3] The Earnings Statements (**Exhibit 2**) erroneously show that Plaintiff was paid on 12/8/2023. Defendant recently started using ADP to process payroll. The "Period Starting," "Period Ending," and "Pay Date" reflected on each of Plaintiff's attached ADP Earnings Statements are inaccurate.

eligibility to sue for unpaid minimum wages and liquidated damages. *See* 29 C.F.R. § 790.21(b).

67.    The fact that Defendant paid Plaintiff five or six days after the regular payday does not bar Plaintiff from seeking liquidated damages. *Belizaire v. RAV Investigative and Sec. Services Ltd.*, 61 F. Supp. 3d 336, 360 (S.D.N.Y. 2014) ("where wages have merely been paid late, as opposed to not having being paid at all, courts have construed Section 216(a) to mean that only liquidated damages (rather than double damages) should be awarded, as reasonable compensation for harm occasioned by … the delay component of the defendant's unlawful pay practices").

68.    Defendant will argue that paying wages a few days late is not an FLSA violation. The pertinent issue is not how late the wages were paid, <u>but whether they were paid on the regular payday</u>. *In re Tug Robert J. Bouchard Corp.*, No. BR 20-34758, 2023 WL 3984198, at *4 (S.D. Tex. June 13, 2023) ("Claims for violations of § 206 accrue on the date the wages should have been paid but were not, an employer who pays no wages on that date has violated the statute."); *Martin v. U.S.*, 117 Fed. Cl. 611, 620 (2014) ("[I]f an FLSA claim accrues when an employee is not paid on a regularly scheduled payday, the FLSA violation also must occur on that day.").

69.    Defendant willfully violated 29 U.S.C. § 206(a)(1) for each workweek in which it failed to pay Plaintiff the FLSA minimum wage ($7.25 per hour) by the regular payday.

70.    Plaintiff is owed liquidated damages in the amount of the violation. *See Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21-CV-1263 (BMC), 2021 WL 4750098, at *3 (E.D.N.Y. Oct. 12, 2021) ("[L]ate wages are considered a form of unpaid wages, and employees paid late are entitled to liquidated damages."); *Valdes v. Kendall Healthcare Group, LTD*, No. 1:22-CV-22046-KMM, 2023 WL 3711012, at *8 (S.D. Fla. May 10, 2023) ("Late payments … require the employer to pay liquidated damages in the amount of the violation.").

**FLSA Retaliation**

71.    The FLSA provides that it is unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on any industry committee.

29 U.S.C. § 215(a)(3).

72.    The goal of the FLSA is to prohibit labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. 29 U.S.C. § 202(a).

73.    "The FLSA relies on workers being able to freely report violations of the law in order for its enforcement to be effective." *Su v. F.W. Webb Co.*, No. 20-CV-11450-AK, 2023 WL 4043771, at *11 (D. Mass. June 16, 2023).

74.    To enforce its standards, the FLSA relies not upon "continuing detailed federal supervision or inspection of payrolls," but upon "information and complaints received from employees seeking to vindicate rights claimed to have been denied." *Kasten v. St.-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (internal citations omitted). Effective enforcement thus depends on employees feeling "free to approach officials with their grievances." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).

75.    The FLSA's anti-retaliation provision enables enforcement by preventing the "'fear of economic retaliation' ... [from] inducing workers 'quietly to accept substandard conditions.'" *Kasten*, 563 U.S. at 11 (quoting *Mitchell*, 361 U.S. at 292).

76.    The *McDonnell Douglas* burden-shifting analysis applies to retaliation claims. *Allison v. City of Farmington*, No. CV 18-401 KG/SCY, 2020 WL 2307307, at *6 (D.N.M. May 8, 2020).

11

Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation, by proving that (1) she engaged in a protected activity; (2) the defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.

*Id*. (citations and quotations omitted).

77.    Plaintiff engaged in protected activity under the FLSA. First, Plaintiff cooperated with the DOL's investigation into Defendant's illegal wage practices, and second, Plaintiff repeatedly notified Defendant that she will not accept the settlement check and that she retained an attorney to independently investigate her wage claims.

78.    Defendant took actions against Plaintiff that were materially adverse. Instead of respecting Plaintiff's legal right to engage in protected activity, Defendant's managers, including Managing Director Aman Patel and Regional Manager Abir Maru, responded by harassing, intimidating, and ridiculing Plaintiff; demoting Plaintiff; stripping Plaintiff of her management duties; demanding that Plaintiff cash the settlement check; documenting as "insubordination" Plaintiff's refusal to cash the settlement check; putting Plaintiff under intense management scrutiny; belittling Plaintiff in group text messages that she was copied on; ridiculing Plaintiff in group text messages for hiring an attorney; isolating Plaintiff from other employees; badmouthing Plaintiff to other employees; assigning nonmanagerial duties to Plaintiff; kicking Plaintiff out of her office; requiring Plaintiff to clock in and clock out like an hourly employee; humiliating Plaintiff by requiring her to report to employees who were previously beneath her; falsely claiming that Plaintiff's work performance was suffering; documenting false incidents of "insubordination"; harassing Plaintiff's children (who also worked for Defendant); intentionally creating a hostile work environment designed to force Plaintiff into quitting; terminating Plaintiff under the guise of

"excessive tardiness and irresponsible behavior"; barring Plaintiff from the premises; willfully withholding Plaintiff's final paycheck; refusing to respond to Plaintiff's written demand for payment; and forcing Plaintiff to submit a wage claim to the DWS to collect her final paycheck.

79.    Managing Director Aman Patel's retaliatory actions were particularly repugnant, reprehensible, and dehumanizing, as he sought to bully Plaintiff into submission.

80.    For example, Managing Director Aman Patel announced in a group text message that Plaintiff and her family must listen to Regional Manager Abir Maru and his wife. (**Exhibit 7**, Aman Patel Text Message.) Mr. Patel instructed the group to "Document everytime when [Plaintiff and her family] does not listen" and then admonished Plaintiff by texting, "I am making this clear to you." (*Id.*)

81.    But perhaps most egregiously, Managing Director Aman Patel shamelessly accused Plaintiff in the group text message of having a mental breakdown. (*Id.*) According to Mr. Patel, who apparently doubles as a business owner and a legal expert, "Mental breakdowns are not acceptable at this business or the Law." (*Id.*)

82.    Lastly, there was a causal connection between the protected activity and the adverse actions, as the adverse actions took place *after* Plaintiff repeatedly refused to accept the settlement check and *after* she notified Defendant that she hired an attorney to investigate her wage claims.

83.    Notably, on 11/28/2023, Plaintiff's counsel sent a letter to Defendant's Directors and Members demanding that they stop retaliating against Plaintiff and warning them that such retaliatory actions were illegal. (**Exhibit 8**, Retaliation Letter.)

84.    The Retaliation Letter only served to amplify Defendant's animus toward Plaintiff.

85.    On 11/28/2023, Managing Director Aman Patel acknowledged receipt of the Retaliation Letter in a group text message that Plaintiff was copied on.

86.    Managing Director Aman Patel instructed Regional Manager Abir Maru to stop giving Plaintiff the settlement check and to document everything that was happening.

87.    Managing Director Aman Patel instructed the group to send him the document incident reports relating to several fictitious incidents of "insubordination," such as Plaintiff allegedly throwing a set of keys at management and harassing the cleaning staff.

88.    Managing Director Aman Patel instructed the group to document the incident of Plaintiff's husband taking away the timekeeping machine, even though the timekeeping machine belongs to Plaintiff's husband.

89.    Managing Director Aman Patel repeatedly instructed the group to document every incident.

90.    Defendant terminated Plaintiff eight days later, 12/6/2023, under the guise of "excessive tardiness and irresponsible behavior." (**Exhibit 4**, Termination Letter.)

91.    The evidence plainly shows that Plaintiff's termination was premeditated, as Defendant was busy building a case against Plaintiff in the days leading up to her termination.

92.    Remarkably, Defendant continued retaliating against Plaintiff *even after firing her*, as Defendant withheld Plaintiff's final paycheck and refused to respond to Plaintiff's written demand for payment, forcing Plaintiff to submit a wage claim to the DWS. (**Exhibit 5**, Written Demand; **Exhibit 6**, Wage Claim Submission.)

93.    Since being fired, Plaintiff has struggled to find employment in the hospitality industry, as Defendant's managers have reached out to other hospitality industry employers to trash Plaintiff's reputation.

94.    Even worse, Defendant intentionally misrepresented to the DWS that Plaintiff's separation of employment was due to misconduct, depriving Plaintiff of unemployment benefits.

95.     Defendant's egregious decision to intentionally harm Plaintiff's reputation within the local hospitality industry has only served to amplify Plaintiff's lost wage damages.

96.     Defendant's egregious decision to intentionally misrepresent the circumstances surrounding Plaintiff's separation of employment deprived Plaintiff and her family of badly needed unemployment benefits – leaving Plaintiff frustrated, disillusioned, and broke.

97.     Defendant's animus toward Plaintiff is emblematic of how Defendant's managers typically treat employees – especially women – who refuse to bend or submit to their will.

98.     Defendant's retaliatory actions against Plaintiff were particularly brazen given that they came in the wake of a DOL investigation into Defendant's illegal wage practices.

99.     The evidence supports that Defendant retaliated against Plaintiff for refusing to accept the settlement check and for hiring an attorney to investigate her wage claims.

100.    The evidence supports the temporal proximity suggestive of retaliatory animus.

101.    Hence, Plaintiff has presented a prima facie claim of unlawful retaliation.

102.    The FLSA allows a plaintiff who has been retaliated against to recover lost wages plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

**FLSA Recordkeeping Violations**

103.    While an employee bringing suit under the FLSA has the burden of proving she performed work for which she was improperly compensated, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), the FLSA provides that every employer subject to the Act "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him," 29 U.S.C. § 211(c).

104.    The regulations mandate tracking the hours worked each workday and workweek, as well as total wages paid for each pay period. 29 C.F.R. § 516.2(a).

105.    The Supreme Court in *Mt. Clemens Pottery Co.* recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. 328 U.S. at 687-88. The Court stated:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.*

106.    Defendant violated the FLSA by failing to properly maintain records of, among other things, the hours Plaintiff worked each workday and within each workweek. Hence, Plaintiff is entitled to the relaxed burden-shifting scheme enunciated in *Mt. Clemens Pottery Co.*

**FLSA Statute of Limitations**

107.    The FLSA has a two-year statute of limitations unless the employer's violation was "willful," in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a).

108.    To establish a "willful" violation, an employee must prove that the employer either knew or showed "reckless disregard" for the matter of whether its conduct was prohibited by statute, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), where "reckless disregard" means "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

109.    Defendant's conduct in this case was "willful" because Defendant knew or recklessly disregarded the possibility it was violating the FLSA.

110.    Had Defendant actively endeavored to ensure compliance with the FLSA, Defendant would have discovered that exempt employees must be paid at least $684 per week. *See*

29 C.F.R. § 541.600. Defendant's failure to read a simple FLSA regulation was, at best, reckless.

111.    Defendant's conduct was "willful," and a three-year statute of limitations applies.

**FLSA Liquidated Damages**

112.    An employer who violates the FLSA is liable for unpaid overtime and minimum wage compensation plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

113.    However, a court has discretion to award no liquidated damages or to reduce the amount of liquidated damages awarded where an employer shows to the satisfaction of the court that it acted in good faith and had reasonable grounds for believing it was in compliance with the Act. 29 U.S.C. § 260; *Dept. of Lab. v. City of Sapulpa, Okl.*, 30 F.3d 1285, 1289 (10th Cir. 1994).

114.    "It is the employer's burden to establish good faith and reasonable grounds for believing its actions did not violate the FLSA; if the employer fails to carry this burden, liquidated damages are mandatory." *Solis v. A Touch of Glass Enterprises, Inc.*, No. CV 07-01289 MV/LFG, 2010 WL 11597440, at *8 (D.N.M. Mar. 23, 2010) (citations omitted).

115.    Defendant never consulted with the DOL, an attorney, or an accountant to determine whether its pay practices complied with the FLSA.

116.    Given the plain language of 29 C.F.R. § 541.600 (requiring exempt employees to be paid at least $684 per week), it is difficult to ascertain how Defendant could have believed that Plaintiff was exempt from FLSA overtime pay. Moreover, even if Defendant *did* believe that Plaintiff was exempt from FLSA overtime pay, such belief was unreasonable.

117.    It is difficult to ascertain how Defendant could have believed that the FLSA authorizes employers to withhold an employee's pay. Moreover, even if Defendant *did* believe that the FLSA authorizes employers to withhold an employee's pay, such belief was unreasonable.

118.    It is difficult to ascertain how Defendant could have believed that the FLSA

authorizes employers to retaliate against employees for exercising their FLSA rights. Moreover, even if Defendant *did* believe that the FLSA authorizes employers to retaliate against employees for exercising their FLSA rights, such belief was unreasonable.

119.    Hence, Defendant cannot meet its substantial burden to demonstrate that it acted in good faith and with the reasonable belief that its pay scheme and retaliatory conduct complied with the FLSA, and therefore, there is no basis to limit or deny Plaintiff an award of liquidated damages.

<u>**COUNT I**</u>
<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.***</u>
<u>**FAILURE TO PAY OVERTIME WAGES**</u>

120.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

121.    At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" under 29 U.S.C. §§ 203(d) and (e)(1).

122.    At all relevant times, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her under 29 U.S.C. § 203(g).

123.    As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff worked 71 hours per week, but Defendant willfully violated 29 U.S.C. § 207(a)(1) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek.

124.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 207(a)(1), an employee is entitled to his or her unpaid overtime compensation plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

<u>**COUNT II**</u>
<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.***</u>
<u>**FAILURE TO TIMELY PAY MINIMUM WAGES**</u>

125.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

126.    Defendant willfully violated 29 U.S.C. § 206(a)(1) for each workweek in which

Defendant failed to pay Plaintiff the FLSA minimum wage ($7.25 per hour) by the regular payday.

127.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 206(a)(1), an employee is entitled to his or her unpaid minimum wage compensation plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT III
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.*
## UNLAWFUL RETALIATION

128.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

129.    Defendant willfully violated 29 U.S.C. § 215(a)(3) by retaliating against Plaintiff for, *inter alia*, refusing to accept a settlement check arising from the DOL's investigation into Defendant's illegal wage practices and for hiring an attorney to investigate her wage claims.

130.    Plaintiff engaged in protected activity, Plaintiff suffered an adverse employment action, and there was a causal link between the protected conduct and the adverse action.

131.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of 29 U.S.C. § 215(a)(3), an employee is entitled to, *inter alia*, payment of lost wages plus an additional equal amount as liquidated damages plus attorneys' fees and costs.

## COUNT IV
## VIOLATION OF NEW MEXICO MINIMUM WAGE ACT, N.M. STAT. § 50-4-19 *et seq.*
## FAILURE TO PAY OVERTIME WAGES

132.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.    At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" under N.M. Stat. §§ 50-4-21(B) and 50-4-21(C).[4]

---

[4] The term "employee" excludes any individual employed in a bona fide executive, administrative or professional capacity. N.M. Stat. § 50-4-21(C)(1). The FLSA contains a similar exemption. *See* 29 U.S.C. § 213(a)(1). Unlike the FLSA, the MWA does not have extensive accompanying regulations defining and interpreting the statutory language. However, New Mexico courts frequently look to interpretations of the FLSA to interpret similar language in the MWA. *See, e.g., Williams v. Mann*, 388 P.3d 295 (N.M. Ct. App. 2016).

134.    At all relevant times, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her under N.M. Stat. § 50-4-21(A).

135.    N.M. Stat. § 50-4-22(D) provides that, "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."

136.    As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff worked 71 hours per week, but Defendant willfully violated N.M. Stat. § 50-4-22(D) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek.

137.    N.M. Stat. § 50-4-26(C) provides that, "[a]n employer who violates [N.M. Stat. § 50-4-22(D)] shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

138.    N.M. Stat. § 50-4-26(E) provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant."

### COUNT V
### VIOLATION OF NEW MEXICO MINIMUM WAGE ACT, N.M. STAT. § 50-4-19 *et seq.*
### FAILURE TO PAY MINIMUM WAGES

139.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

140.    N.M. Stat. § 50-4-22(A) requires employers to pay employees a minimum wage.

141.    The 2021 New Mexico minimum wage was $10.50 per hour. N.M. Stat. § 50-4-22(A)(3).

142.    The 2022 New Mexico minimum wage was $11.50 per hour. *Id.* § 50-4-22(A)(4).

143.    The 2023 New Mexico minimum wage was $12.00 per hour. *Id.* § 50-4-22(A)(5).

144.    As a Hotel Manager at the Quality Inn Tucumcari, Plaintiff worked 71 hours per week.

145.    Plaintiff's base salary on 11/21/2021 was $31,616.00 per annum, paid bi-weekly, which equates to $608.00 per week. (**Exhibit 2**, Earnings Statements.)

146.    Plaintiff's weekly salary ($608.00) divided by the number of hours worked per week (71) fell below the 2021 New Mexico minimum wage ($10.50 per hour) and the 2022 New Mexico minimum wage ($11.50 per hour).

147.    Defendant willfully violated N.M. Stat. § 50-4-22(A) by failing to pay Plaintiff the 2021 New Mexico minimum wage ($10.50 per hour) from 11/21/2021 to 12/31/2021.

148.    Defendant willfully violated N.M. Stat. § 50-4-22(A) by failing to pay Plaintiff the 2022 New Mexico minimum wage ($11.50 per hour) from 1/1/2022 to 3/31/2022.

149.    On 4/1/2022, Defendant raised Plaintiff's base salary to $33,999.94 per annum, paid bi-weekly, which equates to $653.85 per week. (**Exhibit 2**, Earnings Statements.)

150.    Plaintiff's weekly salary ($653.85) divided by the number of hours worked per week (71) fell below the 2022 New Mexico minimum wage ($11.50 per hour) and the 2023 New Mexico minimum wage ($12.00 per hour).

151.    Defendant willfully violated N.M. Stat. § 50-4-22(A) by failing to pay Plaintiff the 2022 New Mexico minimum wage ($11.50 per hour) from 4/1/2022 to 12/31/2022.

152.    Defendant willfully violated N.M. Stat. § 50-4-22(A) by failing to pay Plaintiff the 2023 New Mexico minimum wage ($12.00 per hour) from 1/1/2023 to 8/27/2023.

153.    N.M. Stat. § 50-4-26(C) provides that, "[a]n employer who violates [N.M. Stat. § 50-4-22(A)] shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid

wages."

154.    N.M. Stat. § 50-4-26(E) provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant."

## COUNT VI
## VIOLATION OF NEW MEXICO MINIMUM WAGE ACT, N.M. STAT. § 50-4-19 *et seq.* UNLAWFUL RETALIATION

155.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

156.    N.M. Stat. § 50-4-26.1 provides,

It is a violation of the Minimum Wage Act for an employer or any other person to discharge, demote, deny promotion to or in any other way discriminate against a person in the terms or conditions of employment in retaliation for the person asserting a claim or right pursuant to the Minimum Wage Act or assisting another person to do so or for informing another person about employment rights or other rights provided by law.

157.    Defendant willfully violated N.M. Stat. § 50-4-26.1 by retaliating against Plaintiff for, *inter alia*, refusing to accept a settlement check arising from the DOL's investigation into Defendant's illegal wage practices and for hiring an attorney to investigate her wage claims.

158.    Plaintiff engaged in protected activity, Plaintiff suffered an adverse employment action, and there was a causal link between the protected conduct and the adverse action.

159.    N.M. Stat. § 50-4-26(C) provides that, "[a]n employer who violates [N.M. Stat. § 50-4-26.1] shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

160.    N.M. Stat. § 50-4-26(E) provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action and reasonable attorney fees to be paid by the defendant."

**COUNT VII**
**VIOLATION OF NEW MEXICO WAGE PAYMENT ACT, N.M. STAT. § 50-4-1 *et seq.***
**FAILURE TO TIMELY PAY DISCHARGED EMPLOYEE**

161.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

162.    At all relevant times, Defendant was an "employer" under N.M. Stat. § 50-4-1(A).

163.    N.M. Stat. § 50-4-4(A-B) provides,

Whenever an employer discharges an employee, the unpaid wages or compensation of such employee … shall, upon demand become due immediately, and the employer shall pay such wages to the employee within five days of such discharge. In all other cases of discharged employees the settlement and payment of wages or compensation shall be made within ten days of such discharge.

164.    N.M. Stat. § 50-4-4(C) provides,

In case of failure to pay wages or compensation due an employee within the time hereinbefore fixed, the wages and compensation of the employee shall continue from the date of discharge until paid at the same rate the employee received at the time of discharge, and may be recovered in a civil action brought by the employee; provided that the employee shall not be entitled to recover any wages or compensation for any period subsequent to the date of discharge unless he pleads in his complaint and establishes that he made demand within a reasonable time upon his employer at the place designated for payment and payment was refused, provided further that the employee shall not be entitled to recover any wages or compensation for any period subsequent to the sixtieth day after the date of discharge.

165.    Defendant terminated Plaintiff on 12/6/2023. (**Exhibit 4**, Termination Letter.)

166.    Defendant willfully withheld Plaintiff's final paycheck.

167.    Plaintiff issued a written demand for payment to Regional Manager Abir Maru on 12/22/2023, but Mr. Maru ignored Plaintiff's written demand and refused to pay Plaintiff her final paycheck, forcing Plaintiff to submit a wage claim to the DWS on 12/26/2023. (**Exhibit 5**, Written Demand; **Exhibit 6**, Wage Claim Submission.)

168.    In response to Plaintiff's wage claim submission to the DWS, Defendant paid Plaintiff on 12/28/2023 – 22 days after terminating her.

169.    Defendant never intended to pay Plaintiff her final paycheck.

170.    Defendant planned to withhold Plaintiff's final paycheck in perpetuity.

171.    But for Plaintiff's wage claim submission to the DWS, Defendant never would have paid Plaintiff her final paycheck.

172.    Defendant never notified Plaintiff that it was withholding her final paycheck.

173.    Defendant was not lawfully permitted to withhold Plaintiff's final paycheck.

174.    Plaintiff never authorized Defendant to withhold her final paycheck.

175.    Defendant's egregious decision to withhold Plaintiff's pay and to ignore her written demand for payment was particularly brazen given that it came in the wake of a DOL investigation into Defendant's illegal wage practices.

176.    Defendant's egregious decision to withhold Plaintiff's pay and to ignore her written demand for payment is emblematic of how Defendant typically treats departing employees.

177.    Defendant's egregious decision to withhold Plaintiff's pay and to ignore her written demand for payment is emblematic of Defendant's distaste and complete lack of respect for federal and state wage-and-hour law.

178.    Defendant's decision to withhold Plaintiff's pay and to ignore her written demand for payment is just another example of Defendant's long-held practice of evading federal and state wage-and hour law which ultimately resulted in a DOL-enforcement action.

179.    Plaintiff seeks to recover penalty wages pursuant to N.M. Stat. § 50-4-4(C).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment as follows:

a.    Finding that Defendant willfully violated 29 U.S.C. § 207(a)(1) and N.M. Stat. § 50-4-22(D) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times her "regular rate" of pay for all hours worked over 40 in a workweek;

b.    Finding that Defendant willfully violated 29 U.S.C. § 206(a)(1) for each workweek in which Defendant failed to pay Plaintiff the FLSA minimum wage ($7.25 per

hour) by the regular payday;

c.     Finding that Defendant willfully violated 29 U.S.C. § 215(a)(3) and N.M. Stat. § 50-4-26.1 by retaliating against Plaintiff for engaging in protected activity;

d.     Finding that Defendant willfully violated N.M. Stat. § 50-4-22(A) by failing to pay Plaintiff the applicable New Mexico minimum wage;

e.     Finding that Defendant willfully violated N.M. Stat. § 50-4-4(A-B) by failing to timely pay wages or compensation to Plaintiff upon discharge;

f.     Damages under 29 U.S.C. § 216(b) in the amount of Plaintiff's lost wages and unpaid overtime compensation;

g.     Liquidated damages under 29 U.S.C. § 216(b) in the amount of Plaintiff's lost wages and unpaid minimum wage and overtime compensation;

h.     Damages under N.M. Stat. § 50-4-26(C) in the amount of Plaintiff's lost wages and unpaid minimum wage and overtime compensation, plus interest;

i.     Liquidated damages under N.M. Stat. § 50-4-26(C) in an amount equal to 200% of Plaintiff's lost wages and unpaid minimum wage and overtime compensation;

j.     Penalty wages under N.M. Stat. § 50-4-4(C);

k.     Reasonable attorneys' fees and costs under 29 U.S.C. § 216(b) and N.M. Stat. § 50-4-26(E);

l.     Pre- and post-judgment interest; and

m.     Such other and further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff, by her undersigned counsel, hereby demands a jury trial under Fed. R. Civ. P. 38.

Dated: January 15, 2024          */s/ Rod M. Johnston*
                             Rod M. Johnston
                             **JOHNSTON LAW, PLLC**
                             6911 Duchess Court
                             Troy, Michigan 48098
                             (586) 321-8466
                             rod@johnstonlawflsa.com

                             *Attorney for Plaintiff*